IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHERYL LYNN WORSLEY,  )
　　　　　　　　　　　　)
　　　　Plaintiff,　　　)
　　　　　　　　　　　　)
　　　　v.　　　　　　　) Civil Action No. 15-1635
　　　　　　　　　　　　)
　　　　　　　　　　　　)
CAROLYN W. COLVIN, ACTING )
COMMISSIONER OF SOCIAL SECURITY, )
　　　　　　　　　　　　)
　　　　Defendant.　　　)

O R D E R

AND NOW, this 30th day of March, 2017, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 11), filed in the above-captioned matter on May 20, 2016,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 9), filed in the above-captioned matter on April 20, 2016,

IT IS HEREBY ORDERED that said Motion is GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's Motion is granted to the extent that is seeks remand to the Commissioner of Social Security ("Commissioner") for further evaluation as set forth below, and denied in all other respects. Accordingly, this matter is hereby remanded to the Commissioner for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

**I.　Background**

On October 12, 2012, Plaintiff Cheryl Lynn Worsley filed a claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq. Specifically, Plaintiff

claimed that she became disabled on October 23, 2011, due to degenerative disc disease, facet syndrome, fibromyalgia, osteoarthritis, depression, and anxiety disorder. (R. 186, 187).

After being denied initially on April 26, 2013, Plaintiff sought, and obtained, a hearing before an Administrative Law Judge ("ALJ") on May 23, 2014. (R. 26-90). In a decision dated July 23, 2014, the ALJ denied Plaintiff's request for benefits. (R. 9-25). The Appeals Council declined to review the ALJ's decision on October 14, 2015. (R. 1-5). Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

## II. Standard of Review

Judicial review of a social security case is based upon the pleadings and the transcript of the record. See 42 U.S.C. § 405(g). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. See Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) (noting that "'[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive'" (quoting 42 U.S.C. § 405(g))); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues, and reviews the ALJ's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate'" to support a conclusion. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)). However, a "'single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d 110,

114 (3d Cir. 1983)). "'Nor is evidence substantial if it is overwhelmed by other evidence— particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.'" Id.

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period. See Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability as defined by the Act. See 20 C.F.R. § 404.1520. In Step One, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. See 20 C.F.R. § 404.1520(a)(4)(i). If so, the disability claim will be denied. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. See 20 C.F.R. § 404.1520(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522. If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the Commissioner must proceed to Step Three and determine whether the claimant's impairment meets or equals the

criteria for a listed impairment. See 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

Step Four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work, see 20 C.F.R. § 404.1520(a)(4)(iv), and the claimant bears the burden of demonstrating an inability to return to this past relevant work, see Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his or her former occupation, the evaluation then moves to the fifth and final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. See 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the ALJ should consider the claimant's RFC, age, education, and past work experience. See id. The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523.

## III. **The ALJ's Decision**

In the present case, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since October 23, 2011. (R. 14). The ALJ also found that Plaintiff met the second requirement of the process insofar as she had certain severe impairments, specifically, degenerative disc disease, fibromyalgia, major depressive disorder, and panic disorder. (R. 14). The ALJ further concluded that Plaintiff's impairments did not meet any of the listings that would satisfy Step Three. (R. 14).

The ALJ next found that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except that she is limited to no more than occasional postural activities; is able to sit, stand, or walk, each for a total of six hours of an eight-hour work day; is limited to simple, routine, and repetitive one-two-step tasks that involve only simple decision-making and few, if any, workplace changes; may not perform tandem tasks; and is limited to no more than occasional interaction with supervisors, coworkers, and members of the general public. (R. 16). At Step Four, the ALJ found that Plaintiff is unable to perform any past relevant work, and he moved on to Step Five. (R. 19). The ALJ then used a vocational expert ("VE") to determine whether or not a significant number of jobs existed in the national economy that Plaintiff could perform. The VE testified that, based on Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy, such as laundry folder, remnant sorter, and cleaner. (R. 20). Accordingly, the ALJ found that Plaintiff was not disabled. (R. 20-21).

## IV. Legal Analysis

Plaintiff raises several arguments as to why she believes that the ALJ erred in finding her to be not disabled. While the Court does not fully agree with the arguments set forth by Plaintiff, it does agree that remand is warranted in this case. Specifically, because the Court finds that the ALJ mischaracterized or misconstrued certain facts in the record in assessing Plaintiff's credibility and in formulating her RFC, the Court cannot find that Plaintiff's RFC is supported by substantial evidence. Accordingly, the Court will remand the case for further consideration.

RFC is defined as "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" Fargnoli, 247 F.3d at 40 (quoting Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000)); see also 20 C.F.R. § 404.1545(a). Not only

5

must an ALJ consider all relevant evidence in determining an individual's RFC, the RFC finding "must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" Fargnoli, 247 F.3d at 41 (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)). "'[A]n examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision.'" Id. (quoting Cotter, 642 F.2d at 705); see also SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).").

In formulating Plaintiff's RFC, the ALJ determined that, after considering all of the evidence, Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" for the reasons that he explained in his decision. (R. 18). In supporting his credibility finding, however, the ALJ made certain erroneous statements—and reached some questionable conclusions—regarding the evidence of record.

For example, Plaintiff testified at her administrative hearing that she thinks that she was diagnosed with fibromyalgia in 2004. (R. 46). However, in his review of Plaintiff's alleged impairments, the ALJ erroneously stated that Plaintiff had testified that she was diagnosed with fibromyalgia in 2014. (R. 17). Also, in explaining how, in his opinion, the evidence of record fails to fully support Plaintiff's allegation of disability, the ALJ again erroneously asserted that Plaintiff had testified that she was diagnosed with fibromyalgia in 2014, rather than in 2004.

(R. 18). The ALJ further explained that, elsewhere in the record, Plaintiff alleged a 16-year history of fibromyalgia and degenerative disc disease, which he implied conflicts with this very recent diagnosis of fibromyalgia from 2014. (R. 18). Because Plaintiff never testified that she was not diagnosed until 2014, her diagnosis date does not present the contradiction that the ALJ implies, and the ALJ clearly erred in relying on this factor in assessing Plaintiff's credibility.

Also in justifying his evaluation of Plaintiff's credibility, the ALJ asserted that, although there were minimal findings on Plaintiff's diagnostic imaging, she reported to the consultative examiner that she suffered from a herniated disc in her thoracic spine. (R. 18). In actuality, the evaluation states that Plaintiff had x-rays and an MRI and "was told" that she had a herniated disc in her thoracic spine. (R. 339). The ALJ further contended that, although Plaintiff complained of mid-back pain, "the documentary evidence discloses no diagnostic imaging of [Plaintiff's] thoracic spine." (R. 18). In fact, the ALJ is mistaken here because the record actually contains two MRIs of Plaintiff's thoracic spine, one from 2009 and one from 2010. (R. 615-16, 619-20). Moreover, various treatment records from Advanced Pain Medicine include assessments of "HNP thoracic," which are an indication of a herniated thoracic disc. (R. 246, 267, 273, 285, 288, 291, 294, 300, 303). Thus, considering the above-listed evidence, Plaintiff could reasonably have believed that she has a herniated disc when she reported to the consultative examiner that that was what she had been told. Therefore, the Court finds that the ALJ erred in his consideration of the evidence of record on this issue as well.

Finally, the ALJ also found damaging to Plaintiff's credibility the fact that, even though she was advised on June 3, 2013, that she did not satisfy the diagnostic criteria for lupus or a connective tissue disease, she told her psychotherapist two days later that she "found out that she might have Lupus." (R. 19, 496). While it is true that Plaintiff's medical records indicate tests

7

showed that she did "not satisfy the ACR criteria for lupus," and that the "[i]mplications of the positive ANA" were discussed with her, the records also reveal that further evaluation was recommended (consisting of lab work including connective tissue disease antibodies, complement levels and acute phase reactants), that further decisions would be made when investigations became available for review, and that she would call to discuss the results of her lab work in 2-3 weeks. (R. 440). Thus, because her test results appear to have been inconclusive at that point in time, and because she was about to undergo further testing, Plaintiff could reasonably have believed that later testing might still have shown that she has lupus. It also seems understandable, since her diagnosis remained unclear, for Plaintiff to have told her psychotherapist that she might have lupus. It is the opinion of the Court that, in singling out this statement to demonstrate Plaintiff's lack of credibility, the ALJ held Plaintiff, a layperson, to an unreasonably high standard with regard to the expectations for understanding the implications of the medical tests being conducted and the diagnoses being considered.

The Court thus finds that the ALJ's recitation of the evidence relied upon in assessing Plaintiff's credibility contained several mischaracterizations and unreasonable interpretations. The Court finds that these errors call into question the appropriateness of the ALJ's credibility finding, and the RFC formulated by the ALJ is, therefore, not supported by substantial evidence. Thus, remand is required to allow for further discussion as to the ALJ's assessment of Plaintiff's credibility and his evaluation of Plaintiff's RFC.

Additionally, although the Court takes no position as to Plaintiff's remaining issues, the ALJ should, of course, ensure that proper weight be accorded to the various opinion and medical evidence presented in the record, and he should verify that his conclusions concerning Plaintiff's RFC are adequately explained, in order to eliminate the need for any future remand.

## V. **Conclusion**

In short, because the ALJ mischaracterized or misconstrued certain evidence in the record—evidence upon which he clearly relied in evaluating Plaintiff's credibility and in ultimately determining Plaintiff's RFC—the Court finds that substantial evidence does not support the ALJ's decision in this case. The Court hereby remands this case to the ALJ for reconsideration consistent with this Order.

s/ Alan N. Bloch  
United States District Judge

ecf:         Counsel of record